UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

SOUNTHALA PHANDANOUVONG,                    Case No. DG 08-10058
                                            Chapter 7
            Debtor.                         Hon. Scott W. Dales

_____/

In re:

REBECCA JOYCE BUSHER,                       Case No. DG 08-10348
                                            Chapter 7
            Debtor.                         Hon. Scott W. Dales

_____/

OPINION REGARDING TRUSTEE'S OBJECTION TO AMENDED
CLAIM OF EXEMPTIONS

Introduction

After several months of discovery in two similar but unrelated contested matters, In re Sounthala Phandanouvong, Case No. 08-10058, and In re Rebecca Busher, Case No. 08-10348, the court held separate trials on September 23, 2009 to consider the Chapter 7 trustee's objection to amended exemption claims involving income tax refunds.

Ms. Phandanouvong and Ms. Busher (the "Debtors") initially failed to list their anticipated 2008 tax refunds (the "Refunds") on Schedules B or C, but after filing their income tax returns, both Debtors promptly filed amended schedules to disclose the Refunds and claim them as exempt. Their common Chapter 7 Trustee, Jeff A. Moyer (the "Trustee"), timely filed objections to the amended exemption claims (the "Objections").

The Trustee has filed similar objections in numerous cases pending before each of the judges of this court. He has made no secret of his distaste for the all-too-common local practice of debtors' failing to disclose contingent and unliquidated tax refund rights in disregard of their disclosure obligations under the Bankruptcy Code, Rules, and the Official Forms. After filing the tax returns, and usually on advice of counsel, many debtors in our District disclose anticipated tax refunds for the first time by filing amended schedules, rather than by listing contingent and unliquidated refund rights in their original schedules, as the law plainly requires. The Trustee invites the court to address this epidemic of "reckless indifference" by establishing a rule of law disallowing exemptions as a sanction for nondisclosure, much as Judge Rhodes did in In re Colvin, 288 B.R. 477 (Bankr. E.D. Mich. 2003).

Although the requested ruling may have a deterrent effect in future cases, and the court in general shares the Trustee's aversion to debtors' postponing disclosure of tax refunds, the court must decline the invitation to sanction the Debtors because the Trustee has not established that the estates he represents were in fact injured by the nondisclosure, or that the remedy he seeks redresses the alleged concealment in a way that permits the court to act.

Because the court's analysis applies equally to both Debtors, in the interest of economy this opinion constitutes the court's resolution in each contested matter.

Factual Background

As previously stated, the Objections arise out of the Trustee's understandable frustration with the common practice among debtors and their counsel of failing to disclose potential tax refunds on their schedules at the time of bankruptcy filing and later amending the schedules to disclose the precise amount of their refunds. See In re Thomasma, 399 B.R. 20 (Bankr. W.D. Mich. 2008). The Trustee's statements in court on various occasions, the arguments of Debtors'

2

counsel in these two matters, and the court's own rulings and experience all confirm that a custom of liberal amendment has developed in this District which encourages the practice at issue.

The historical facts of both cases are not generally in dispute, though the inferences and consequences of those facts are earnestly contested. Fairly summarized, both Debtors have, for many years, received sizeable income tax refunds from the state and federal governments, and both Debtors are, by their own admission, relatively unsophisticated wage-earners with modest adjusted gross incomes between $23,000 and $35,000 annually. Both Debtors filed voluntary bankruptcy petitions before the end of the 2008 tax year.

Although both Debtors had doubts about whether they would be able to claim various tax exemptions, deductions, or credits on account of dependents or possible dependents during 2008, the court infers that both of them knew or should have known they would be receiving the Refunds, although they could not be certain as to the amount. Indeed, both testified they received at least some income tax refund for many years before the filing.

Similarly, both Debtors claimed the federal exemptions under 11 U.S.C. § 522(b)(2), and had no difficulty estimating the value of property, other than the Refunds, on their bankruptcy schedules. The Debtors each relied on the same counsel, who advised them that it was unnecessary to estimate or even schedule the Refunds until they were prepared to amend them with precise dollar amounts. Both Debtors had available exemptions through the "spillover" from 11 U.S.C. § 522(d)(1) that would cover the Refunds under the "wildcard" exemption provided under 11 U.S.C. § 522(d)(5), so neither had any reason to conceal the Refunds on their original schedules. Furthermore, both Debtors filed in a Circuit and District that takes a liberal approach to amendment of bankruptcy schedules, including Schedule C (exemptions). See

3

Lucius v. McLemore, 741 F.2d 125 (6th Cir. 1984); In re Thomasma, 399 B.R. 20 (Bankr. W.D. Mich. 2008); In re Falconer, Case No. 08-01764 (Bankr. W.D. Mich. August 8, 2008); In re Tribble, Case No. 07-04419 (Bankr. W.D. Mich. August 8, 2008).

The principal difference between the two Debtors is that Ms. Phandanouvong, whose first language was not English, testified that she expected to receive a refund in some indeterminate amount when she commenced her bankruptcy case. Ms. Busher was less certain that she would get any refund at all.  In both cases, the evidence established that the Debtors and their counsel took an insouciant or cavalier approach to the refund disclosure obligations in their original Schedule B, in reliance on Rule 1009's liberal amendment policy and the custom in our District. Both Debtors promptly notified their attorney when the amount of their Refunds became liquidated and no longer contingent upon filing tax returns. Both Debtors also promptly amended Schedules B and C to identify the Refunds and claim them as exempt. From the uncontested argument of counsel, it appears both Debtors spent the Refunds well before trial, and well before either was authorized by the court to do so.

Although the Trustee asserted various legal arguments against allowing the amended exemption in the Refunds, the court previously rejected those arguments for the reasons set forth in prior opinions. See Scheduling Order dated May 1, 2009 (DN 26 in Case No. 08-10058 and DN 29 in Case No. 08-10348) at p.1; see also In re Thomasma, 399 B.R. 20 (Bankr. W.D. Mich. 2008); In re Falconer, Case No. 08-01764 (W.D. Mich. August 8, 2008); In re Tribble, Case No. 07-04419 (W.D. Mich. August 8, 2008).

The Trustee's trial brief included an argument premised on a supposed violation of the automatic stay and postpetition expenditure of the Refunds.  However, he waived those arguments at the commencement of each trial primarily because his goal in filing the Objections

4

was to shape the case law in this District based on a carefully circumscribed fact pattern, and also because he did not initially include the argument in the Objections.

## Jurisdiction

The court has jurisdiction over the Debtors' cases under 28 U.S.C. § 1334(a), and each contested matter qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of exemptions from property of the estate), referred to the court under 28 U.S.C. § 157(a). This familiar jurisdictional analysis and recitation would usually satisfy the court's duty to ensure that it is acting within its authority. Occasionally, however, circumstances come to light that cast doubt on jurisdiction under various non-statutory doctrines, such as mootness, ripeness, redressability, or justiciability. A bankruptcy court has a duty to raise these constitutional and prudential limitations on jurisdiction because, as a federal court, it must respect the limits on its power, and because jurisdictional defects cannot be waived. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). As the court noted during the trial, the Trustee has the burden of proof in objecting to the exemptions, and because he is the party invoking the court's jurisdiction, he has the burden of establishing it. See Fed. R. Bankr. P. 4003(c); Steel Co., 523 U.S. at 104 (the party invoking federal jurisdiction bears the burden of establishing its existence).

To meet his burden of establishing jurisdiction, and more specifically, the justiciability of the instant controversy, the Trustee must satisfy Article III requirements. Therefore, he, or more precisely each bankruptcy estate he represents, must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

5

opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

## Analysis

The Trustee's Objections are admittedly designed to bring about a decision from this court establishing that the careless failure to disclose an unliquidated or contingent right to a tax refund at the time of bankruptcy filing forfeits the right to exempt the tax refund later by amendment. Without reaching the merits of either contested matter, the court is constrained to note its unwillingness to participate in a proceeding that is brought for the purpose of developing the law rather than maximizing the benefit to the estate or achieving a just balance of the Debtor's exemption rights and the creditors' recovery rights *in the case under consideration*. See Warth v. Seldin, 422 U.S. 490, 499 (1975) (judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally).

Likewise, the manner in which the Trustee has framed the present litigation, calculated to obtain a "pure legal" ruling, comes very close to inviting the court to issue an advisory opinion, which federal courts must avoid. Preiser v. Newkirk, 422 U.S. 395 (1975); State of Ohio ex rel. Celebreeze v. United States Department of Transportation, 766 F.2d 228 (6th Cir. 1985); Associated General Contractors of America, Central Ohio Division v. City of Columbus, 147 F. Supp. 2d 864 (S.D. Ohio 2001). In addition, the Trustee does so at the expense of the Debtor, the estate, and the court by promising needless multiplication of proceedings.

At the commencement of trial, after it appeared from the Trustee's brief and statements in opening argument that the Debtors spent or transferred the property at issue, the court observed that the only proper purpose of exemption-related litigation is to determine whether the property

6

at issue may be employed as part of a debtor's fresh start, or whether the property shall instead be used to administer the estate and pay creditors. <u>See</u> 11 U.S.C. § 522(c) & (k). However, where it is undisputed that the Debtors have dissipated the Refunds, a declaration in favor of either party would have no significance. Each of the Debtors has accelerated her fresh start by spending the potentially exemptible Refunds, and the Trustee must first bring the money back into the estate before he can use it to pay creditors. Under these circumstances, the court expressed doubt at trial about its jurisdiction to decide these exemption disputes.

It is rather clear that if the exemption is not properly claimed because of concealment or bad faith or for some other reason, the estate has been injured by the Debtors' apparently unauthorized postpetition transfer of the Refunds. The injury resulting from the transfer is concrete, particular, and not hypothetical. But, as noted above, in his effort to establish a particular rule of law imposing a sanction for nondisclosure of tax refunds, the Trustee in each contested matter eschewed any argument about, or relief from, the postpetition transfers. In view of this deliberate narrowing of the issues, the court's questions during opening argument focused on the redressability aspect of the jurisdictional puzzle, given the manner in which the Trustee has presented the case. If the Trustee is not seeking to recover the Refunds or otherwise hold the Debtors accountable for dissipating them, the court cannot grant meaningful relief *to the Trustee's two bankruptcy estates* by issuing a feckless declaration that denies the use of the Refunds the Debtors have already spent.

The Trustee's response to the court's jurisdictional inquiry was inadequate. Though he suggested that the expense of bringing an adversary proceeding made him hesitate to file such an action and that exemptions are determined as of the petition date, he intimated he might use a favorable ruling in these exemption disputes as a predicate to avoiding and recovering the

Refunds against the Debtors in future, unfiled actions under 11 U.S.C. §§ 542, 549 and 550. Putting aside the obvious inefficiencies of such a "claim-splitting" approach to nondisclosure, such future actions will not cure the present jurisdictional defect. "Future positions taken by the parties might bring such issues into controversy, but that possibility is simply too remote from the present controversy to keep this case alive." Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 71 (1983) (citing Golden v. Zwickler, 394 U.S. 103, 109 (1969)).

To be precise, the wrongdoing the Trustee seeks to redress in these contested matters is not the unauthorized transfer of the Refunds, but the failure to disclose them in the first instance. The Debtors addressed the latter concern by promptly disclosing the Refunds in amended schedules. This leaves the court in considerable doubt as to whether the estate was injured in fact and in a concrete way by the nondisclosure of the Refunds, as opposed to being injured by the postpetition use of the Refunds, because the Trustee has made no showing that he has been prejudiced or misled in representing the two estates concerned.

Indeed, the Trustee argued that based upon the 2007 tax returns he had in his possession at the first meeting of creditors, the Debtors knew or should have known they had a right to sizeable Refunds in November or December, 2008, even if they were uncertain as to the amount. However, given the Trustee's greater experience and sophistication, and his review of the very same 2007 returns in advance of the first meeting of creditors, the Trustee also knew or should have known the Debtors were entitled to large Refunds. Yet despite this knowledge, the Trustee asked perfunctory questions at the first meeting of creditors. In both cases, evidently aware that the Refunds were in prospect even before the Debtors filed the amendments at issue, the Trustee

8

notified the Internal Revenue Service ("IRS") that the estates claimed the Refunds, and asked the IRS to remit them to the Trustee.[1]

Under the circumstances, the court has difficulty seeing how the initial nondisclosure of the Refunds caused any injury. The Trustee knew better than the Debtors that they would most likely receive the Refunds. In addition, the remedy the Trustee seeks, a declaration that the Debtors cannot exempt the Refunds because they concealed or recklessly failed to disclose them, does not address the nondisclosure and resulting injury, if any. If the estates were injured at all,[2] it was by the postpetition use of the Refunds, not the initial nondisclosure.

Furthermore, because the Trustee deliberately attempted to reserve the issue of the postpetition transfer of the Refunds for another proceeding, and instead elected to pursue only declaratory relief regarding the Debtors' ability to exempt the now-spent Refunds, the relief requested would not "alter the [estate's] current situation and, accordingly, would not redress the injuries alleged." American Civil Liberties Union v. National Security Agency, 493 F.3d 644, 671 (6th Cir. 2007). As the Sixth Circuit recently noted,

> "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." Steel Co., 523 U.S. at 107, 118 S.Ct. 1003. Redressability thus requires "that prospective relief will remove the harm," Warth, 422 U.S. at 505, 95 S.Ct. 2197, and the plaintiff must show "that he personally would benefit in a tangible way from the court's intervention," id. at 508, 95 S.Ct. 2197 (footnote omitted).

Id., 493 F.3d at 670. Although the interests at issue in these contested matters are perhaps not as weighty as the interests at issue in the NSA decision, the jurisprudential principle is the same.

---

[1] The IRS did not honor the requests.

[2] It is not clear, given the availability of the wildcard exemption, that the estates would be harmed by allowing either amended exemption, if the court views these issues as of the petition date.

9

The court finds instructive the Supreme Court's opinion in <u>Linda R. v. Richard D.</u>, 410 U.S. 614, 615 (1973), because in that case, as in the present contested matters, the complaining party could establish injury, but the relief requested would not redress the injury. <u>Linda S.</u> involved a single-mother's attempt to enforce a criminal statute requiring "dead-beat dads" to pay child support. The complaining single-mother sought an order jailing her child's father for failure to pay. The Sixth Circuit characterized the Supreme Court's ruling as follows:

> The Supreme Court acknowledged that the mother had "no doubt suffered an injury stemming from the failure of her child's father to contribute support payments." The Court reasoned, however, that even if she "were granted the requested relief, it would result only in the jailing of the child's father," and not remedy the harm caused by his failure to pay child support. The Court thus held that "the 'direct' relationship between the alleged injury and the claim sought to be adjudicated, which ... is a prerequisite of standing," was absent in that case.

<u>ACLU</u>, 493 F.3d at 670 (citations omitted). Here, although the estates may have suffered an injury from the nondisclosure of the Refunds (or more likely from the postpetition expenditure), the relief requested would not remedy either harm.

That the Trustee is seeking to establish case law through this litigation as a prophylactic measure in the next case does not change the analysis. The court must decide issues presented for the purposes of resolving individual, concrete controversies, not to correct systemic wrongs by legislating from the bench. The bankruptcy estates' interests in the <u>Phandanouvong</u> and <u>Busher</u> cases are not well-served by the Trustee's sacrifice of recovery under § 542, § 549 or § 550 in the present cases in exchange for a favorable ruling he might use in future cases. Indeed, this shortcoming exemplifies some of the reasons for the "case and controversy," mootness, and redressability prerequisites to federal jurisdiction.

10

If the Trustee had been advancing the interests of his present constituents (the estates of Ms. Phandanouvong and Ms. Busher) instead of seeking to rid the District of the effects of a liberal amendment policy, he would have pursued and perhaps obtained redress of the estate's injuries resulting from the postpetition transfer. Instead, because he elected to limit the requested relief to declaratory sanctions for nondisclosure, and because he failed to establish redressability of that injury in this proceeding, the court is constrained to allow the exemption in each case to stand as claimed.

Although the court would have little difficulty concluding that the Debtors' nondisclosure is inconsistent with the Bankruptcy Code, Rules, and Official Forms, Congress has prescribed a sanction for nondisclosure -- denial of discharge -- but only if the Debtors acted "knowingly and fraudulently" or with intent to "hinder, delay, or defraud creditors." See 11 U.S.C. § 727(a)(2) and (a)(4). The Sixth Circuit in Lucius v McLemore also recognized authority in the bankruptcy courts to impose a less sever sanction -- denial of exemption -- but only in cases of bad faith and concealment. The unreported opinion upon which the Trustee primarily relied at trial similarly emphasized the debtor's fraud and bad faith. In re Millsaps, 774 F.2d 1163 (6th Cir. 1985) ("The crucial question in this case becomes whether the debtor's nondisclosure of the tax refund was in bad faith or fraudulent").

In the present contested matters, the Trustee conceded the absence of bad faith, but is asking the court to expand the sanction arsenal by judicial fiat to punish "reckless indifference" with respect to accuracy of the schedules. Assuming for the sake of argument that the court has that authority in a proper case, see, e.g. 11 U.S.C. § 105(a) and In re Colvin, supra, or that such expansion would even be consistent with Sixth Circuit precedent, the court certainly does not

11

have the authority in a case in which the proponent of the relief has failed to establish injury in fact or redressability.

Accordingly, the court will enter a separate order in each contested matter overruling the Trustee's objection to exemptions for want of jurisdiction.

Signed this 2nd day of October, 2009
in Grand Rapids, Michigan

Scott W. Dales
United States Bankruptcy Judge

12